Widliams, J.
The office of the additional judge provided for by the act of February 24th, 1868, having become vacant *349 by the resignation of the incumbent, April 29th, 1887, and the vacancy having been filled by appointment by the governor, until a successor should be elected and qualified, the question is presented, when shall such successor be elected for the unexpired term ? Shall it be at the general election of the first Tuesday after the first Monday in November, 1887, or at the annual election to be held on the first Monday in April, 1888 ?
The act creating the office (65 Ohio L. 11) provides that “the first election for said additional judge shall be held on the first Monday in April, 1868, and his term of office shall commence on the second Monday in May thereafter.” It also provides, that “ the sheriff in each county in said subdivision, shall, at least fifteen days prior to the first Monday in April, 1868, and at least fifteen days prior to the first Monday of April thereafter, in each year, when an election for such additional judge is to be held, give notice by proclamation of the time and place of holding such election,” and “ any vacancy that may occur in the office of such additional judge, by death, resignation or otherwise, shall be filled as in other cases of vacancy in the office of judge of said court.”
Section 11 of the Revised Statutes, relating to appointments to fill vacancies, and the election of successors in such cases, contains the following provision: “ When an elective office becomes vacant, and is filled by appointment, such appointee shall hold the office till his successor is. elected and qualified, and such successor shall be elected at the first proper election that is held more than thirty days after the occurrence of the vacancy.”
The question still remains, what is the proper election ? In the absence of any other positive rule, the answer naturally suggested would be, that it is the first regular recurrence of that election, at which the officer, whose successor is to be chosen, was elected; or, in other words, the first election occurring, appropriate to that particular office, under the law regulating elections to that office.
It'is claimed, however, that section 13, of article 4, of the constitution prescribes a different and positive rule on the subject. Its language is : “ In case the office of any judge shall *350 become vacant before tbe expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor, until a successor is elected and qualified; and such successor shall be elected for the unexpired term, at the first annual election that occurs more than thirty days after the vacancy shall have happened.” Under this section of the constitution two propositions are urged in behalf of the relator:
1. That the November election is the first annual election occurring more than thirty days after the vacancy happened, and by the plain terms of the section, the successor for the unexpired term must be elected thereat.
2. That since, by the constitution, state officers are required to be elected at the fall, and not at the spring, election and' since judges are state officers, the annual election contemplated by the section, is the general election for state officers.
These propositions may be considered together. It is a fundamental rule that to properly determine the effect to be given any clause of an instrument, a due regard must be had to all its parts, and its various provisions be so construed, if possible, as to make a harmonious whole. In the constitution, elections are characterized as general, and annual. Section 1, of article 3, provides that the officers of the executive department, viz.: governor, lieutenant-governor, secretary of state, auditor of state, treasurer, and attorney-general, shall be chosen on the second Tuesday of October (now the first Tuesday after the first Monday of November), and the provision of section 18 of the same article is: that every vacancy in the office of auditor, treasurer, secretary, and attorney-general, “ shall be filled by election, at the first general election that occurs more than thirty days after it shall have happened.” Section 4, of article 10, provides that township officers shall be elected on the first Monday of April annually; and by the terms of section 15 of the schedule, “ until otherwise provided by law, elections for judges shall be held, and the poll-books returned as is provided for governor.” It will thus be seen that certain state officers are required by the constitution to be elected at the October (now November) elec *351 tion, which is therein called the general election; .township officers, until the recent amendment, were required by the same instrument to be elected annually in April, which is the only election denominated annual by the constitution; while the time for holding elections for judges rests wholly in the legislative discretion. This discretion has been exercised, and various periods fixed by law for the election of judges; some are chosen at the general election, some at the April election, and some at other-times. The act creating the office of the additional judge in question, appointed the April election as the one at which to choose incumbents for that office. So that if Judge Bingham had served his full term, the election for choosing his successor would be that occurring on the first Monday in April, 1888.
• It is to be observed that section 13, of article 4 of the constitution, does not authorize the successor of a judge whose office becomes vacant before the expiration of his term, to be elected at the first election that occurs more than thirty days after the vacancy happens. It certainly -would have done so, by omitting the word “ annual,” if the sole or dominating purpose was to so limit the executive patronage in filling vacancies, that persons appointed thereto should hold only until it was possible to elect the successors. While a primary object of the constitution undoubtedly was to make the office of judge elective by the people, the limitation upon the power of executive appointments to vacancies, was intended to be reasonable, and to some practical end. The same intention and policy is manifest in the provisions of section 18, of article 3, investing the governor with the like power of filling vacancies in the office of auditor, treasurer, secretary and attorney-general, and requiring all such vacancies to be filled at the first general election that occurs more than thirty days after they shall happen. >
It is worthy of notice that in this latter section the first general election is the period fixed for filling vacancies, while in section 13, of article 4, it is the first annual election. It cannot be assumed that this difference in phraseology was accidental, or that the terms are used in the same sense. The pre *352 sumption is, that the language was selected with care, and used with accuracy; and that if it had been intended to designate the same election in the two sections, the same descriptive terms would have been employed in each. The fact that in the two sections of the same instrument relating to the kindred subjects, the elections at which vacancies are tó be filled are described in different language, raises the inference that they are, or may be, different elections. As has been seen, vacancies occurring in the offices named in section 18, of article 3, are to be filled at the general election, and can be at no other; and this obviously was made so, because that is the one prescribed by the constitution for the regular election of those officers. But one purpose can therefpre be perceived for the difference in the phraseology of the two sections; and that is, that inasmuch as the times for the election of judges, was left by the constitution to the discretion of the legislature, and might, in some instances at least, be fixed by statute for periods other" than those of the general election, it was intended to provide for filling vacancies in that office, at the first annual elections at the periods so fixed, that occur more than thirty days after the vacancies shall happen; thus applying to appointments by the governor under each section, the same reasonable rule and limitation. In the case of all elective officers, the necessity for the existence of some continuous authority to fill vacancies temporarily, in order that the performance of their duties may not be too seriously interrupted, and the inconvenience and inadequacy of any system, by which such power could be exercised by the people through the medium of popular elections, except at regular periods, led, no doubt, to the adoption of both sections; the design of each being, as we conceive, to effectuate the same general policy of uniformity in filling vacancies already alluded to. It is said that the general election is an annual election, because it occurs regularly every year at the same stated time; and where it is the next election that occurs more than thirty , days after a vacancy has happened in the office of any judge, it becomes the first annual election so occurring, and the successor must therefore be chosen at that election. Equally, and in the same *353 sense, is the April election an annual election, for it occurs regularly every year at stated times; and it would follow, that ■where it, is the next election that .occurs more than thirty days after such vacancy happens, that woul<d, “for the same reason, become the first annual election, and tb,e one at which the successor must be chosen. If this is the meaning to be given to the term annual election, then, although judges of the supreme court, judges of the probate court and many judges of the court of common pleas, are regularly elected at the general election, their successors, where vacancies happen after that election, and more than thirty days before the ensuing April election, would have to be elected at the latter.. Such has not been the generally accepted interpretation.
In State v. Taylor, 15 Ohio St. 137, while the question we are now considering was not directly involved, Brinkerhoff, C. J., in the opinion, after quoting section 13, of article 4, says: “Now according to the facts in this case, admitted by the pleadings, Cassad, the deceased predecessor of the defendant Taylor, was regularly and duly elected (probate judge of Logan county)’ on the second Tuesday of October, 1860, for the full term of three years from the ninth day of February, 1861, which would expire on the ninth day of February, 1864. He died in October, 1861. The defendant Taylor was appointed to fill, for the time being, the vacancy thus created, and was elected to the same office at the October election, 1862.” And in Foster v. Scarff, 15 Ohio St. 533, speaking of the same election, the same judge says: “ On the second Tuesday of October, 1862, Taylor was regularly elected to said office.” And see State v. Cogswell, 8 Ohio St. 620.
From these cases and considerations, it may be accepted as a sound conclusion, that where a judge is by law required to be elected at the general election, and his office becomes vacant before the expiration of his term, the next general election that occurs more than thirty days after the vacancy happens, is the first annual election so occurring, within the meaning of section 13, of article 4, of the constitution, at which his successor must be elected; and it would seem as certainly to follow that, where, by law, the office of judge is created, and the *354 April election is tbe one established for the regular election of incumbents thereto, and it becomes vacant before the expiration of the term, the next April election occurring more than thirty days after the vacancy happens is the first annual election for choosing the successor. The rule should work both ways; for the same reason that supports one conclusion, sustains the other; unless it can be maintained that because judges are state officers, their successors must be elected at the general election. Such is the relator’s claim. In his behalf it is said that officers are divided into two classes; state and county officers constituting one, and township officers the other class; and that where reference is made in the constitution and laws to annual elections in connection with officers of the former class, the general election is meant: and when made in connection with the latter, the April election is intended; and consequently all vacancies in offices of the former class must be filled at the general election.
The statement of the proposition at once provokes the inquiry, that if such was the intention of the framers of the constitution, why they did not in section 13, of article 4, provide that every vacancy in the office of judge should be filled at the first general election, as they did in section 18, of article 3, in regard to executive officers? We have before indicated that the difference in the phraseology of the two sections was for a purpose, and what that purpose was; and adverted to the different provisions made concerning elections for executive and judicial officers, from which it appears that under the constitution it is perfectly competent to1 provide by statute for the election of all judges at the April election. If it were so provided, and their regular elections so set apart for a period different and distinct from the general election, would it be claimed that, because judges are state officers, the elections for their successors in cases of vacancies, must be fixed with reference to the elections at which executive officers are regularly chosen, rather than those appointed for the regular election of all judicial officers?
The legislature has seen proper to provide that some of the judges of the court of common pleas shall be elected at the *355 general election, and some at the April election. For the purposes of election, they may therefore be divided into two classes; one including all to be elected at the general, and the other all to be elected at the April, election. Undoubtedly, where vacancies happen, the successors for the unexpired terms of those chosen at the general election, should be elected at that election, not because it is the general election, nor because state executive officers are elected thereat, but because that is the annual election appropriate to that particular office. For the same reason, successors for the unexpired terms of those chosen at the April election, should be elected at that election. The proper election for choosing successors in every case, is determined by reference to the election established by law for the particular office.
The real ground for the claim that where a vacancy occurs, the successor for the unexpired term of a judge should be elected at the general election, is that that is the appropriate election for that office, because it is a state office, and that is the election at which state officers are regularly elected. This is, at last, determining what is the appropriate election for choosing the successor, by reference to the election at which the officer is regularly chosen; and the grade or class to which the office belongs, is of consequence only as it makes that certain. The reasoning is that since judges are state officers, and the latter are regularly elected at the general election, therefore that is the proper election whereat to . elect successors to fill vacancies for the unexpired terms of judges. The defect in the reasoning is evident; all judges, though state officers, are not regularly elected at the general election, but some are so elected at the April election; and hence, whether a successor for the unexpired term of any particular judge, is to be chosen at the general, or at the April election, depends upon which is the one established by law far regular elections to that office; the decisive fact in each case being, not the rank of the office, but the class of elections to which the law has assigned it.
The statute creating the office of additional judge under discussion, has made specific provisions for the election of judges thereunder, and appointed the April election, as the one at *356 which, they are to be so elected; and a majority of the court are of the opinion, that the eleetioa to be held on the first Monday of April, 1888, will, within the meaning of the constitution, be the first annual election occurring after the vacancy in the office happened, by the resignation of Judge Bingham, and the proper one under the statute for choosing the successor for the uhexpired term.
The provision in the act of 1868 that “ any vacancy shall be filled as in other cases of vacancy in the office of judge of said court,” is not incompatible with this conclusion; for, as judges are by law elected at different elections, the election of a successor for the unexpired term in other cases, must be governed by the considerations already expressed.
The further claim is made, that section 2978 of the Revised Statutes, as amended March 24, 1886 (83 Ohio L. 35), which provides that all general elections for judge of the court of common pleas shall be held on the first Tuesday after the first Monday of November, rejjeals that part of the act of February 24, 1868, relating to the election of judges thereunder, and changes all such elections from April to November.
The obvious answer to this claim is, that, by its terms, the section applies only to general elections, and the act referred to is unaffected by it. Writ refused.
Owen, C. J., and Minshall, J., dissent.